IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 1418-03






DONALD C. HEIDELBERG, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIRST COURT OF APPEALS


HARRIS COUNTY





 Meyers, J., delivered the opinion of the Court, in which Keller, P.J., and
Womack, Keasler, Hervey, and Cochran, JJ., join. Johnson, J., filed a dissenting
opinion, in which Price, and Holcomb, JJ., join.


O P I N I O N 



 Appellant was indicted for sexually assaulting his wife's eight-year-old
granddaughter. Appellant and his wife were babysitting the victim when, according to the
victim, Appellant came into her room while she was sleeping and fondled her and stuck his
penis in her anus. Appellant denied the accusations and took the stand in his own defense. 
The jury convicted him and sentenced him to 25 years in prison. He now appeals, arguing
that the Court of Appeals erred in holding that he failed to preserve the claims that the trial
court erred in: 1) permitting the prosecutor to cross examine him about his post-arrest
silence, 2) permitting the prosecutor to elicit rebuttal testimony about his post-arrest
silence through Detective James Fitzgerald, and 3) overruling Appellant's objections to the
prosecutor's comments on his post-arrest silence during final argument in the guilt-innocence stage of trial. 

 The first ground for review claimed by Appellant pertains to the State's cross-examination at trial, when it began questioning Appellant about his willingness to speak to
the investigator and whether he knew that the investigator was trying to contact him about
the allegations. The following exchange occurred:

 [STATE]: Mr. Heidelberg, you certainly knew that Detective Fitzgerald was trying to
get a hold of you [to] talk to you, didn't you?

 [DEFENSE COUNSEL]: Objection, Your Honor. This goes to the Fifth Amendment
right, my client's Fifth Amendment. He doesn't have to talk to anybody.

 [COURT]: Be overruled.

* * *

 [STATE]: Did you ever ask to talk to the detective about this case once you knew that
the charges were there?

 [APPELLANT]: I didn't know about any charges until July of this year.

 [STATE]: And in July of this year did you ask to talk to the detective in the case?

 [APPELLANT]: Well, I was already incarcerated. So - -

 [STATE]: Well, did you ever ask anyone - -

 [DEFENSE COUNSEL]: Objection, Your Honor. This goes to the Fifth
Amendment.

 [COURT]: Overruled. Answer the question.

* * *

 [STATE]: You certainly could have talked with the investigating officer on this case
and explained to him, in your opinion, why [the complainant] made this up, right?

 [DEFENSE COUNSEL]: Objection, your Honor. My client - - all of this line of
questioning goes to the Fifth Amendment. My client does not have to speak with
anyone about it.

 [COURT]: Be overruled.

 Appellant's second ground for review refers to the State's rebuttal, when it offered
the testimony of Detective Fitzgerald. The following exchange between the prosecutor and
the detective occurred:

 [STATE]: Were you able to make contact with the defendant?

 [FITZGERALD]: In a way.

 [DEFENSE COUNSEL]: Objection, Your Honor. I would like to renew my objection as
to my
client's Fifth
Amendment
right.

 [COURT]: Be Overruled.

 [DEFENSE COUNEL]: May I have a standing objection throughout so I'm not have
to-

 [COURT]: You may.

* * *

 [STATE]: Once the defendant was placed under arrest, had he wanted to talk to you,
would you have sat down and spoken with him?

 [FITZGERALD]: Oh, definitely; yes, ma'am.

As to Appellant's third ground for review, the State made the following comment during
rebuttal argument at the guilt/innocence stage:

 [STATE]: Do you really believe he wanted to wait five months from the date of
arrest, he saved all that information to come and tell you? Of course not, that's
garbage.

 [DEFENSE COUNSEL]: Your Honor, I object again. And may I have a standing
objection to any reference to the Fifth Amendment?

 [COURT]: That will be overruled.

 On appeal, Appellant contends that the trial court erred in allowing the State to refer
to Appellant's post-arrest silence in violation of Article I, section 10 of the Texas
Constitution. The State, however, urges that Appellant did not preserve error because his
objections at trial were based solely on the Fifth Amendment. The Fifth Amendment of the
federal constitution protects post-arrest silence made only after Miranda warnings have
been given. Fletcher v. Weir, 445 U.S. 603 (1982); Doyle v. Ohio, 426 U.S. 610, 618, 96
S.Ct. 2240, 2245 (1976). Article I, section 10 of the Texas Constitution, however,
protects a defendant's post-arrest silence even before such warnings have been
administered. Sanchez v. State, 707 S.W.2d 575, 582 (Tex. Crim. App. 1986). Thus, in the
present context, the trial judge properly overrules an objection based on "the Fifth
Amendment." An objection referring specifically to the Texas Constitution or the Sanchez
case, however, pointing out that this Court has barred the use of post-arrest, pre-Miranda
statements to impeach a testifying defendant, would be an entirely different matter.

 Texas Rule of Appellate Procedure 33.1(a)(1)(A) provides, in relevant part, that for
a complaint to be presented on appeal, a timely request, objection, or motion must have
been made to the trial court, which "states the grounds for the ruling that the complaining
party sought from the trial court with sufficient specificity to make the trial court aware of
the complaint, unless the specific grounds were apparent from the context." Tex. Rules
App. Proc. Ann. art. 33.1(a)(1)(A) (Vernon 2002) (emphasis added). Texas Rules of
Evidence 103(a)(1) contains similar guidelines, providing that "a timely objection or
motion to strike [must appear] on the record, stating the specific ground of objection, if the
specific ground was not apparent from the context." Tex. Evid. R. Ann. art. 103(a)(1)
(Vernon 2002) (emphasis added). Additionally, it is well settled that the legal basis of a
complaint raised on appeal cannot vary from that raised at trial. Euziere v. State, 648
S.W.2d 700, 703-704 (Tex. Crim. App. 1983).

 In its holding, the Court of Appeals agreed that the trial court erred in allowing
questions and comments pertaining to Appellant's post-arrest silence. Heidelberg v. State,
112 S.W.3d 658 (Tex. App.- Houston [1st Dist.] 2003). However, on rehearing, the court
held that because Appellant's objections at trial were based solely on the Fifth Amendment,
Appellant did not preserve error on the Texas constitutional claim. Id. at 661-662. The
Court of Appeals relied on two cases, Barnum v. State, 7 S.W.3d 782 (Tex. App.- Amarillo
1999), and Cantu v. State, 994 S.W.2d 721 (Tex. App.- Austin 1999, pet. dism'd),
improvidently granted, in its decision. In Cantu, the defendant was convicted of first-degree murder. Id. at 725. At trial, the court allowed expert testimony over the defendant's
objection. On appeal, the defendant argued that the trial court erred in admitting certain
testimony at the punishment phase of trial, violating his Fifth, Sixth, and Fourteenth
Amendment rights under the United States Constitution, as well as his rights under Article
1, sections 10 and 19 of the Texas Constitution. Id. at 732. In deciding that the defendant
failed to preserve for review any state constitutional claims, the court of appeals stated that
"defense counsel never raised the issue of state constitutional requirements at trial." Id. 
The court additionally commented that the defendant had relied solely on a federal case
regarding the Fifth and Sixth Amendments to the federal constitution when making his
objection, and noted that a defendant's errors presented on review must be the same as the
objections raised at trial. Id. at 733. 

 The defendant in Cantu had also claimed that his state statutory rights were violated
under section 54.09 of the Texas Family Code, which sets out certain rights for juveniles. 
At trial, when the allegedly improper testimony was being solicited, the defendant had
objected, saying: "And that also brings up the interesting issue as to whether the waiver is
valid at the time because he's not been certified as an adult at that time. And he requires
special Mirandizing and magistration before any questioning begins." Id. at 733. The court
of appeals held that this objection was insufficient to preserve the state statutory claim for
review because the statement was "too general" to have alerted the trial court that the
defendant was averring to that section of the Family Code. Id. at 733. Additionally, the
court of appeals stated that: "[There was] no indication from the record that the trial judge
understood that the state statute was an authority for defense counsel's objection to the
evidence. Moreover, the statement was made in the context of an argument that
specifically identified federal law grounds for excluding [the doctor's] testimony." Id. at
733.

 In Barnum, the defendant was convicted of murder. Id. at 786. At trial, the State
admitted a written statement by the victim, to which the defendant objected on the basis of
hearsay and a violation of his Sixth Amendment right to confrontation. Id. at 789. On
appeal, the defendant claimed that his federal Sixth Amendment and his State rights to
confrontation under Article 1, section 10 of the Texas Constitution, were violated. Id. at
794. The court of appeals commented that the defendant had not preserved the state
constitutional claim for review because his objection at trial "did not include a timely
objection based on his asserted right under the Texas Constitution." Id. at 794. 

 While it is true that the court's discussions in Cantu and Barnum are dicta, (1) the
cases give support to the notion that presenting a claim based solely on federal grounds will
not suffice to put the court on notice to claims based on State grounds, unless the State
ground is apparent from the context.

 A number of cases deal with the sufficiency of imprecise objections, but because
one must look to the context of each case in order to see if the ground of the objection was
apparent, we must look at each situation individually as it arises. Still, those cases can be
looked to for instructive guidance. In Lankston v. State, 827 S.W.2d 907 (Tex. Crim. App.
1992), the defendant was convicted of aggravated sexual assault and indecency with a child. 
At trial, the following exchange occurred:

 [STATE]: What did [the victim] tell you?

 [WITNESS]: She told me that --

 [DEFENSE COUNSEL]: Your Honor, may I make an objection? There are
parameters that are exceptions to the hearsay rule that I believe this person can
testify to under the rules, and [the State] has so filed [its] letter stating what those
parameters are. I would just request that . . . the questions be posed in a manner so
that the nonobjectionable material she testifies to could be separate from that which
would be hearsay under the rules.

 [COURT]: I just want all the attorneys to stay within the parameters of 38.07[2]. I
believe that's what you're referring to. I'll just say all attorneys will be expected to
[sic] stay within those parameters and couch their questions in that state.

Id. at 909.

* * *

 [STATE]: Around June of 1987, what did [the victim] tell you happened to her?

Id. at 910. The witness proceeded to testify to an incident not within the State's written
summary of her proposed testimony. Defense counsel objected, saying: "Your Honor,
once again I'm going to have to object that this is hearsay." Id. The following exchange
then occurred:

 [STATE]: Judge, I can show you what we filed as our intent to use 38.07[2].

 [COURT]: It's on file here. Let me read it here. All right. I'll overrule the objection. 

Id. at 911. In forming its decision, the Court agreed that the defendant should have
specified as to which part of the evidence he was objecting because some of the evidence
was hearsay that had already been ruled admissible and some evidence was hearsay that was
inadmissible. Id. at 910. Still, the Court found that the defendant had preserved error
because "it [was] clear from context that both judge and prosecutor understood
[Defendant's] objection to be a complaint about testimony not falling within the statutory
hearsay exception for 'outcry' witnesses, because the . . . exchange occurred immediately
afterwards." Id. at 910.

 Lankston differs from the case at hand because, due to the prosecutor's specific
questions, as well as the judge's comments when ruling, the record in Lankston clearly
showed that all parties knew the nature of the objection. In contrast, many of the questions
asked to Appellant in the case at hand were not time-specific, i.e. one could not tell from
the State's questions whether the State was asking about pre-arrest silence, post-arrest pre-Miranda silence, or post-arrest post-Miranda silence. Furthermore, the objections by
Appellant's attorney cited only the Fifth Amendment, not the Texas Constitution. Thus, the
situation was not like Lankston, where the defendant's objection "could not reasonably
have [been] understood . . . to mean anything else." Id. at 911.

 In another case, Coleman v. State, 644 S.W.2d 116 (Tex. App.- Austin 1982), the
defendant was convicted of aggravated robbery. While taking the stand at trial, the
Prosecutor asked the defendant: "Well, this story you are telling this jury here today, did
you tell the Grand Jury this story. [sic] I mean did you come up and say, hey, I've been
wrongfully arrested and harassed by [the police]. [sic] Did you tell the Grand Jury? Did you
come up here and tell the Grand Jury that?" Id. at 117-118. The defense counsel objected,
stating, "Your honor, I object to that question. I've been practicing law for seven years and
I've never got [sic] to talk to a grand jury, and for him to imply that this man had an
obligation to do so is totally ridiculous." Id. at 118. The trial judge overruled the
objection. The Court of Appeals reversed the trial court, reasoning that even though the
objection was not specific, it "clearly put the prosecutor and trial judge on notice that the
prosecutor's line of questions invaded the constitutional rights of the defendant to remain
silent by not appearing before the grand jury." Id. at 119. 

 Coleman is distinguishable because the question by the prosecutor was clearly
referring to a time period post-arrest-- the prosecutor was specifically asking about the
defendant speaking to the Grand Jury. In Appellant's case, however, the questions by the
prosecutor did not clearly refer to any specific time-period. Questions such as "you knew
that Detective Fitzgerald was trying to get a hold of you, didn't you?" do not necessarily
refer to post-arrest silence. And, there is no indication in the record that the judge
understood, by defense counsel's objection based on the Fifth Amendment and trailing a
question which swept a broad time-period, that the defense was indeed claiming the
protection of the Texas Constitution.

 Appellant cites to Samuel v. State, 688 S.W.2d 492 (Tex. Crim. App. 1985), to
support his contention that the basis of his objection was apparent from the context. In
Samuel, the defendant was found guilty of forgery. On direct examination by the State, the
prosecutor asked the store clerk whether the defendant ever professed his innocence during
a twenty-minute time period in which the store was holding him until the police arrived. (2) 
The defense attorney objected "to statements made after he was under arrest," and the court
overruled the objection Id. at 494. Later, in jury argument, the prosecutor made the
following comments: 

 "What is the defendant's statement when he's caught [by the store clerk]? 'It's only a
check.' His words. . . . And [the store clerk] told you that for the twenty minutes he
held this defendant until the police arrived that this defendant did not utter one
syllable protesting his innocence. . . . In fact, his silence there at the scene is one of
the most damaging bits of evidence you have before you."

Id. at 494. The defense attorney again objected to the prosecutor's "comment on the
defendant's right to remain silent and his comment on his failure to make a statement at the
scene." Id. On appeal, the State claimed that the defendant's objection at trial preserved
only federal constitutional grounds (under which there would be no protection for post-arrest, pre-Miranda silence), not state constitutional grounds. Id. at 494. This Court cited
to Zillender v. State, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977), quoting the Court's
reasoning that "where the correct ground of exclusion was obvious to the judge and
opposing counsel, no waiver results from a general and imprecise objection," and that even
though the objection was somewhat of a "catchall," it was clear enough to put the court on
notice as to the nature of the defendant's objection. Id. at 495. 

 Samuel is different from this case, however. Central to the Court's holding that the
objection was sufficient to preserve a State law question for review appeared to be the fact
that the defense attorney specified in his objections that the defendant was "under arrest,"
and that the objections came "immediately on the heels of the prosecutor's question which
attempted to elicit testimony as to [the defendant's] failure to protest his innocence." Id. at
495-496. Appellant's objections at trial did not rise to the level of those in Samuel. 
Indeed, Appellant's counsel made no mention of Appellant being under arrest, and the
majority of his objections did not follow questions which specifically referred to post-arrest time periods. Furthermore, there is no indication in the record that the judge
understood that Appellant was trying to invoke a protection different from the Fifth
Amendment protection which he was citing. Appellant cites to two more cases, Cabrales v. State, 932 S.W.2d 653 (Tex. App.-
Houston [14th Dist.] 1996), and Veteto v. State, 8 S.W.3d 805 (Tex. App.- Waco 2000), in
support of his contention that an objection based on the Fifth Amendment is sufficient to
preserve error under the Texas Constitution. In Veteto, the police chief took the stand and
the special prosecutor asked him: "Did [the defendant] deny any of these three aggravated
assault charges?" Id. at 809. Defense counsel objected "because the failure to deny the
offense is absolutely inadmissible."Id. The court sustained the objection. A few questions
later, the special prosecutor again asked the police chief if the defendant made any
statement to him. Defense counsel objected, stating, "Now, that is his Fifth Amendment
right there," and the judge sustained the objection. Id. When the defense counsel asked for
a mistrial, the court responded by saying, "Post arrest silence is- is not in any evidence.
You can't consider it." Id. at 810. After redirect examination, the State again asked the
police chief, "Did you give him an opportunity to talk to you?" Id. To which the defense
counsel objected, "Your Honor, I am going to object to that. He was arrested . . . ." Id. The
court allowed the question.

 The Veteto court determined that the objection was sufficient to invoke the
safeguards of the Texas Constitution because, in reviewing "the questions, the objections,
the responses, and the trial court's interaction, it [was] clear that the objections were
obvious to the trial court." Id. at 810. But such is not the case for Appellant. In Veteto, the
trial judge sustained the objections made by defense counsel, indicating that the judge had
an understanding of the basis on which the objections were made. But here, because the
trial court overruled Appellant's objections without further comment, reviewing "the
questions, the obligations, the responses, and the trial court's interaction" as the court did
in Veteto gives no indication that any other basis for the objection other than that which was
stated (based on the Fifth Amendment) was clearly apparent to the judge.

 In Cabrales, the defendant was convicted of possession with intent to distribute. At
trial, the following exchange occurred:

 [PROSECUTOR]: Once the cocaine is found in those bags and [the deputy] tells the Defendant you [sic] are under arrest, does the Defendant then take the
opportunity to tell them, whoa, wait a second. [sic]

 [DEFENSE COUNSEL]: Excuse me, Your Honor. I will object strenuously to the
attempt to get in a custodial statement of asylum [sic]. Counsel knows that's
absolutely improper. She just said she was under arrest.

Id. at 659 (emphasis added). The trial court overruled the objection. Then, in the very next
statement, the prosecutor said: "You decide what's reasonable. Is it reasonable for an
innocent person who's just been told there is a bunch of cocaine in the bags to not say at
that point-," at which point the defense counsel objected, saying that it was "improper
under the rules and the law. That's a comment on an issue that Counsel knows they can't go
into. And it's also a misstatement of the evidence in this case." Id. Again, the trial court
overruled the objection. The prosecutor again began to address the defendant's silence at
the scene, and defense counsel objected, saying: "I will also object again, as I have before,
Your Honor, to the Prosecutor talking about things that are not in evidence, talking about
custodial interrogation and custodial asylum [sic], all of which are objectionable." Id. at
659-660 (emphasis added). In holding that the objections by defense counsel were
sufficient to preserve error under the Texas Constitution, the court reasoned that, based on
the context of the entire record, the repeated objections were enough to alert the trial court
that the defense was objecting to the improper questions about the defendant's post-arrest
silence. Id. at 661.

 Cabrales differs from Appellant's situation for many of the reasons Veteto differs. 
As in Veteto, the prosecutor's questions in Cabrales clearly pertained to a time period
post-arrest. Additionally, defense counsel stated that the defendant was already under
arrest and used language such as "custodial interrogation and custodial asylum," making it
more obvious to the parties what the basis of the objections were. Furthermore, the record
in Appellant's case gives no indication that the trial judge understood the basis of the
objection to mean that the defense was actually invoking theprotection of the Texas
Constitution, rather than the Fifth Amendment, which was the sole basis upon which the
defense relied. Thus, we cannot agree with Appellant that Veteto and Cabrales stand for
the proposition that an objection solely under the Fifth Amendment, without more,
preserves error to complain under the Texas Constitution. 

 An analogy can be made using the Fourth Amendment and article 38.23 of the Texas
Code of Criminal Procedure. In one case dealing specifically with the Fourth Amendment
and article 38.23, Nelson v. State, 607 S.W.2d 554 (Tex. Crim. App. 1980), the defendant
filed a motion to suppress in which he relied exclusively on federal constitutional rights. In
holding that only the federal claim was preserved for review, the Court reasoned that
"neither the motion to suppress nor trial objection invoked the laws of this State; rather,
[defendant] sought only that protection provided by federal constitutional law." Id. 
Appellant's case can be compared to Nelson. Appellant relied solely on federal grounds,
citing only the Fifth Amendment in almost every objection. 

 We also commented on Nelson in Eisenhauer v. State, 754 S.W.2d 159 (Tex. Crim.
App. 1988). In Eisenhauer, the defendant had filed a pre-trial motion to suppress, stating
that the defendant "was arrested without a warrant and without probable cause in violation of
the IV, V, and XIV Amendments to the Constitution of the United States and in violation of
the laws and Constitution of the State of Texas." Id. at 161. At trial, however, the defense
attorney objected solely on federal grounds. Id. Though the Court concluded that the
objection was sufficient to preserve state constitutional claims for review, the Court was
careful to distinguish Nelson, stating that "[t]his is not like the situation in Nelson . . . in
which this Court held the State law grounds urged by the defendant for the first time on
appeal had not been properly preserved for review since both the objection and the motion
to suppress were based solely on federal grounds." Id. Clearly, the Court was
distinguishing a scenario where a defendant invokes a state right in a motion to suppress but
fails to address it orally at trial, from a situation where a defendant does not allude to the
state constitutional right at all, as Appellant failed to do here.

 Due to: 1) the lack of time-specific questions by the prosecutor, 2) counsel's
failure to cite to the state constitution or even specify that he was objecting to post-arrest
silence, 3) and the lack of commentary by the judge in making his rulings on the objections,
we hold that Appellant did not preserve error on any of the grounds he presents for review. 
We therefore affirm the Court of Appeals. 

 

 Meyers, J.


Delivered: September 15, 2004


Publish
1. The case turned on federal grounds, so the commentary on the state constitutional law issue
was not necessary.
2. The defendant had been held at shotgun point by the store clerk, which the court of appeals
deemed equivalent to being held under arrest. The State did not contest that finding, and this Court did
not rule on the issue. Id. at 495, n.2.